WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Coolpo Licensing LLC, | No. CV-19-05473-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Maurizio Sole Festa, et al., | |
| Defendants. | |

Pending before the Court is a motion to dismiss by Defendants Maurizio Sole Festa, Alexis Fernandez, and VYU 360, LLC (collectively, "Defendants"). (Doc. 22.) For the following reasons, the motion will be granted and this action will be terminated.

## BACKGROUND

I. <u>Factual Background</u>

　　A. **Summary Of Parties And Claims**

In this action, Plaintiff Coolpo Licensing LLC ("CLL"), an Arizona limited liability company, seeks a declaratory judgment of invalidity and non-infringement concerning U.S. Patent No. 10,122,918 ("the '918 patent"). (Doc. 1 ¶ 1, 3.) The '918 patent is a "system for producing 360 degree media." (Doc. 1-2 at 2.) Festa and Fernandez, both Florida residents, are the inventors of the '918 patent, and Fernandez owns the '918 patent. (Doc. 1 ¶¶ 11, 13, 15-17.)[1] VYU 360 is a Florida limited liability company whose

---

[1] On June 16, 2016, Festa and Fernandez filed an application for the '918 patent. (Doc. 1-2 at 2.) On November 6, 2018, the '918 patent was issued. (*Id.*)

registered agent is Festa and one of whose managers is Fernandez. (*Id*. ¶¶ 12, 18-19.)

B. **Defendants' Takedown Request To Apple**

On December 12, 2018, Festa contacted Apple to accuse Shanghai Zhuang Sheng Xiao Meng InfoTech Co., Ltd. ("Shanghai Zhuang"), a nonparty Chinese company, of infringing the '918 patent. (Doc. 22 at 2; Doc. 22-3 ¶¶ 45-48; Doc. 22-5 at 143.) At the time, Shanghai Zhuang was offering an app called "Coolpo" through Apple's App Store. (*Id*.)

On February 6, 2019, Apple removed the Coolpo app from the App Store. (Doc. 1 ¶ 37.)

Notably, at the time of all of these events, CLL did not yet exist.

C. **CLL's Formation And Correspondence With Defendants**

On February 11, 2019, Nathan Brown, who is CLL's counsel of record in this action, sent an email to Festa requesting that he "reinstate the Coolpo software immediately" and threatening a lawsuit for "false claims of patent infringement." (Doc. 22-5 at 155.) This email was vague as to who, exactly, Brown was representing—it contained a reference to the "charges against Coolpo software" and suggested the email was being sent by "Coolpo, through their attorney." (*Id.*) It did not mention CLL by name, nor did it mention the name of Shanghai Zhuang, the Chinese company that had been identified in the takedown notice to Apple. (*Id.*)

Festa responded the same day, disputing the claim of non-infringement and questioning whether Brown's client could file suit in the United States based on his "understanding your customer does not have an established business in the US." (*Id*. at 154-55.)

On February 18, 2019—that is, one week after this email exchange—CLL filed articles of incorporation with the Arizona Corporation Commission. (*Id*. at 158.)

On March 7, 2019, Brown sent an email to Festa informing him that CLL would be filing a lawsuit against Defendants in the District of Arizona. (*Id*. at 162.)

…

II.     Procedural Background

On October 22, 2019, CLL filed the complaint that initiated this lawsuit. (Doc. 1.)

On November 25, 2019, Defendants filed a motion to dismiss. (Doc. 22.)

On January 27, 2020, CLL filed a response. (Doc. 27.)

On February 5, 2020, Defendants filed a reply. (Doc. 28.)

# DISCUSSION

Defendants move to dismiss due to the absence of (1) subject matter jurisdiction and (2) personal jurisdiction. The Court finds the second argument dispositive and therefore will not address the first argument.[2]

I.     Legal Standard

"Federal Circuit law governs the issue of personal jurisdiction in . . . patent-related case[s]." *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1348 (Fed. Cir. 2002). *See also Hildebrand v. Steck Mfg. Co., Inc.*, 279 F.3d 1351, 1354 (Fed. Cir. 2002) ("[W]e apply Federal Circuit law to personal jurisdiction inquiries over out-of-state patentees as declaratory judgment defendants.").[3]

Under Federal Circuit law, "[p]ersonal jurisdiction over an out-of-state defendant is appropriate if the relevant state's long-arm statute permits the assertion of jurisdiction without violating federal due process." *3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1376-77 (Fed. Cir. 1998). In Arizona, the jurisdictional limit of the state long-arm statute is coextensive with that of the United States Constitution. Ariz. R. Civ. P. 4.2(a). Thus, "only inquiry is whether or not exercising personal jurisdiction over the defendants . . . comports with federal due process." *3D Systems*, 160 F.3d at 1377.

"[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum

---

[2] *See, e.g., Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) ("[A] federal court has leeway to choose among threshold grounds for denying audience to a case on the merits.") (quotation omitted); *Rurhgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583-85 (1999) (rejecting argument that district courts must address subject matter jurisdiction before personal jurisdiction).

[3] Thus, CLL is incorrect that the Court must apply Ninth Circuit law on this issue. (Doc. 27 at 12 n.4.)

contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). In line with *International Shoe*, the Federal Circuit applies a "two-pronged test for whether the exercise of jurisdiction comports with due process." *Deprenyl Animal Health*, 297 F.3d at 1350. "First, the defendant must have 'minimum contacts' with the forum." *Id*. A defendant has minimum contacts with a forum either when its contacts are "continuous and systematic," permitting the exercise of general jurisdiction, or when specific personal jurisdiction exists. *Id*. (quotation omitted). Second, if minimum contacts are present, the defendant may still defeat jurisdiction "by presenting a compelling case that other considerations render the exercise of jurisdiction so unreasonable as to violate 'fair play and substantial justice.'" *Id*. at 1351 (quotation omitted).

CLL does not contend that Defendants are subject to general jurisdiction in Arizona. (Doc. 27 at 11-14 [only discussing specific personal jurisdiction].) To determine whether specific personal jurisdiction is present, the Federal Circuit looks to whether "(1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair." *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1363 (Fed. Cir. 2006). "The first two factors correspond with the 'minimum contacts' prong of the *International Shoe* analysis, and the third factor corresponds with the 'fair play and substantial justice' prong of the analysis." *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001).

When personal jurisdiction is disputed, it is permissible for the defendant to submit evidence in support of its position. "[The Federal C]ircuit and the Ninth Circuit . . . agree that where the district court's disposition as to the personal jurisdictional question is based on affidavits and other written materials in the absence of an evidentiary hearing, a plaintiff need only to make a prima facie showing that defendants are subject to personal jurisdiction." *Elecs. For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003).

"[T]he district court must accept uncontroverted allegations in plaintiff's complaint as true and resolve any factual conflicts in plaintiff's favor." *Grober v. Mako P'od., Inc.*, 686 F.3d 1335, 1345 (Fed. Cir. 2012).

II.     Personal Jurisdiction

"[T]he claim in a [patent-related] declaratory judgment action . . . neither directly arises out of nor relates to the making, using, offering to sell, selling, or importing of arguably infringing products in the forum, but instead arises out of or relates to the activities of the defendant patentee in enforcing the patent . . . in suit." *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1332 (Fed. Cir. 2008). So, "[t]he relevant inquiry for specific personal jurisdiction purposes [is] to what extent has the defendant patentee purposefully directed such enforcement activities at residents of the forum, and the extent to which the declaratory judgment claim arises out of or relates to those activities." *Id*. (internal brackets and quotations omitted).

A defendant in a patent-related declaratory judgment action does not "subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement." *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998). Nor do "a defendant patentee's sales, even of products covered by its own patents in the forum state . . . necessarily relate to the patentee's amenability to specific personal jurisdiction in actions for declaratory judgment of non-infringement and invalidity of those patents." *Avocent*, 552 F.3d at 1335. Instead, the Federal Circuit requires the defendant "to have engaged in 'other activities' that relate to the enforcement or the defense of the validity of the relevant patents." *Id*. at 1334 (emphases omitted). "Examples of these 'other activities' include initiating judicial or extra-judicial patent enforcement within the forum, or entering into an exclusive license agreement or other undertaking which imposes enforcement obligations with a party residing or regularly doing business in the forum." *Id.*

Here, Defendants have not purposefully directed any activities relating to the enforcement or defense of the '918 patent toward Arizona. The sole instance of

- 5 -

enforcement-related activity occurred in December 2018, when Defendants (in Florida) sent an email to Apple (in California) concerning alleged infringement by Shanghai Zhuang (a Chinese company). At the time this email was sent, CLL did not even exist and Defendants' understanding—which CLL has not attempted to controvert—was that Shanghai Zhuang did not engage in any business activity in the United States. It is difficult to see how this communication could be deemed an intentional effort by Defendants to engage in patent enforcement activity in Arizona.

The subsequent email correspondence between Brown and Defendants doesn't affect this conclusion. This correspondence was initiated by Brown, CLL still didn't exist at the time the correspondence began, and Brown didn't suggest in his initial email that his client was based in Arizona. Moreover, Defendants didn't include, in their response to Brown's email, any threat to pursue an enforcement action. Nor would it have made sense to include such a threat—the Chinese company's product had already been removed from the App Store. In any event, even if the email correspondence had discussed ongoing infringement, and even if the email correspondence had also placed Defendants on notice that Brown's client was based in Arizona, Federal Circuit law is clear that communication about infringement without enforcement activity is insufficient to support specific personal jurisdiction. *Cf. Red Wing Shoe*, 148 F.3d at 1361 (a defendant patentee does not "subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement" because "grounding personal jurisdiction on such contacts alone would not comport with principles of fairness").

CLL's counterarguments are unavailing. First, CLL appears to argue that because it is the exclusive licensee of the Chinese company against whom enforcement was originally sought, this status alone makes jurisdiction in Arizona proper. (Doc. 27 at 13 [underlining the phrase "an exclusive licensee headquartered or doing business in the forum state"].) CLL fails to grapple with the fact that it didn't even exist at the time Defendants made the threat of enforcement concerning Shanghai Zhuang. CLL's position thus seems to be that if a patent holder makes a threat of enforcement against a foreign

company that does not engage in any business in the United States, the patent holder has nevertheless exposed itself to litigation in all 50 states because the foreign company could subsequently enter into a licensing agreement with another company located in the United States and that licensee would then be entitled to sue the patent holder in whatever state it happens to be based. This is not the law and would hardly "comport with principles of fairness." *Red Wing Shoe*, 148 F.3d at 1361.

Second, CLL argues that because Defendants' actions have blocked it from selling its products in the United States, which includes Arizona, specific personal jurisdiction lies in Arizona. (Doc. 27 at 13-14.) CLL conspicuously fails to identify any case law supporting this proposition, which other courts have rejected. *See, e.g., Tube-Mac Indus., Inc. v. Campbell*, 2020 WL 1911464, *5 (W.D. Pa. 2020) ("Plaintiffs assert that Campbell, in obtaining a United States patent, received the right to prevent others from making, using, or selling the system set forth in the '049 Patent in Pennsylvania, as well as in all other states. This action alone does not constitute sufficient contact with *this Commonwealth* such that this Court can exercise jurisdiction over Campbell."). CLL's proposed rule, taken to its logical conclusion, would automatically subject patentees to jurisdiction in all 50 states by reason of their patent's nationwide effect. Federal Circuit law governing specific personal jurisdiction is far more demanding than that.

III.     Request For Jurisdictional Discovery

CLL argues the Court should, at a minimum, authorize jurisdictional discovery. (Doc. 27 at 14.) In support of this request, CLL suggests that "most of the evidence, supporting the Plaintiff's position that the Defendants allude to, could be in China" and that "[u]nfortunately, due to a series of events, obtaining information from China is difficult at this time." (*Id*.)

When reviewing a district court's refusal to grant jurisdictional discovery, the Federal Circuit applies the law of the regional circuit. *Nuance Comms., Inc. v. Abbyy Software House*, 626 F.3d 1222, 1235 (Fed. Cir. 2010). Under Ninth Circuit law, jurisdictional discovery "may be appropriately granted where pertinent facts bearing on the

question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008) (citation omitted). A district court does not abuse its discretion in denying such discovery where the request is "based on little more than a hunch that it might yield jurisdictionally relevant facts." *Id*.

Although the Court is sympathetic to and cognizant of the obstacles to litigation posed by the ongoing COVID-19 pandemic, CLL's request is based on nothing more than a hunch that it might, if allowed to pursue discovery in China, locate information relevant to the question of jurisdiction. This is a particularly speculative hunch—CLL has not identified any reason to believe this hypothetical information would concern enforcement activities by Defendants directed at the state of Arizona or would otherwise be relevant to the question of specific personal jurisdiction. Accordingly, CLL's request will be denied.

Accordingly, **IT IS ORDERED** that Defendants' motion to dismiss (Doc. 22) is **granted**. The Clerk of Court is instructed to enter judgment accordingly and terminate this action.

Dated this 15th day of June, 2020.

Dominic W. Lanza
United States District Judge